1   SHIRLI FABBRI WEISS (Bar No. 079225)
    **DLA PIPER US LLP**
2   401 B Street, Suite 1700
    San Diego, CA  92101-4297
3   Tel: (619) 699-2700
    Fax:  (619) 699-2701
4   Email:  *shirli.weiss@dlapiper.com*

5   DAVID PRIEBE (Bar No. 148679)
    DAVID BANIE (Bar No. 217924)
6   **DLA PIPER US LLP**
    2000 University Avenue
7   East Palo Alto, CA 94303-2248
    Tel:  (650) 833-2000
8   Fax:  (650) 833-2001
    Email:  *david.priebe@dlapiper.com*
9   Email:  *david.banie@dlapiper.com*

10  Attorneys for Defendants
    APPLIED SIGNAL TECHNOLOGY, INC., GARY
11  YANCEY and JAMES DOYLE

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14  | IN RE APPLIED SIGNAL | Master File No. C 05-1027 (SBA) |
    | TECHNOLOGY, INC. SECURITIES | Consolidated Action |
15  | LITIGATION | |

    CLASS ACTION

16

17  **DEFENDANTS' ANSWER TO
    CONSOLIDATED AMENDED CLASS
    ACTION COMPLAINT**

18

19

    **DEMAND FOR JURY TRIAL**

20  This Document Relates To:
    ALL ACTIONS
21

22

23

24

25

26

27

28

1    Defendants Applied Signal Technology, Inc. ("Applied Signal"), Gary Yancey

2  ("Yancey"), and James Doyle ("Doyle") (collectively, "Defendants") hereby answer the

3  Consolidated Amended Class Action Complaint ("Complaint") as follows.  Paragraph numbers in

4  this document correspond to the paragraph numbers of the Complaint and respond to the

5  allegations of that paragraph, up to the Affirmative Defenses section of this document.  For each

6  paragraph, if an allegation is not explicitly admitted, it is denied.

7    1.    Defendants admit that this lawsuit is brought on purported behalf of all persons

8  who purchased common shares of Applied Signal during the Class Period, as defined in the

9  Complaint, under the statutes set forth in the paragraph.  Defendants deny the remaining

10  allegations of this paragraph.

11    2.    Defendants admit that this lawsuit is asserted under the statute and rule referenced

12  in Paragraph 2 of the Complaint.  Defendants deny the remaining allegations of this paragraph.

13    3.    Defendants admit that subject matter jurisdiction in this lawsuit is asserted under

14  the statutes referenced in Paragraph 3 of the Complaint.  Defendants deny the remaining

15  allegations of this paragraph.

16    4.    Defendants admit that venue is proper in this District, in that Applied Signal has its

17  principal executive offices in this District.  Defendants deny the remaining allegations of this

18  paragraph.

19    5.    Defendants admit that they (or some of them) used the means of interstate

20  commerce to undertake some of the actions alleged in the Complaint.  Defendants deny the

21  remaining allegations of Paragraph 5.

22    6.    Defendants lack knowledge or information sufficient to form a belief as to the

23  truth of the allegations of this paragraph regarding Plaintiff's purchases of common stock, and on

24  that basis deny them.  Defendants deny the remaining allegations of this paragraph.

25    7.    Admitted.

26    8.    Defendants admit that Yancey was, during the purported Class Period, the

27  Chairman, President, and Chief Executive Officer of Applied Signal.  Defendants admit that

28  Yancey certified all SEC quarterly or annual reports for the purported Class Period, and signed an

annual report.  Defendants admit that Yancey sold 141,400 shares of Applied Signal stock during the period from January 3, 2005 through January 18, 2005, and that this represented over forty percent of his personal holdings in common stock prior to the sales, exclusive of options. Defendants admit that these sales preceded the close of Applied Signal's quarter ending January 31, 2005.  Defendants deny the remaining allegations of this Paragraph 8.

9.      Defendants admit that Doyle was, during the purported Class Period, the Chief Financial Officer and Vice President of Finance of Applied Signal.  Defendants admit that Doyle signed and certified all SEC quarterly and annual reports for the purported Class Period. Defendants deny the remaining allegations of Paragraph 9.

10.     Defendants admit that Yancey and Doyle participated in the management of Applied Signal, and were involved in the day-to-day operations of the company during the purported Class Period.  Defendants deny the remaining allegations of Paragraph 10.

11.     Defendants admit that Yancey and Doyle were officers of Applied Signal during the purported Class Period.  Defendants admit that Yancey was a director of Applied Signal during the purported Class Period.  Defendants admit that Applied Signal's common stock was registered with the SEC and traded on the NASDAQ National Market.  The scope of any duties Yancey and Doyle may have owed under the federal securities laws is a conclusion of law to which an answer need not be given.  Defendants deny the remaining allegations of  Paragraph 11.

12.     Denied.

13.     Defendants admit that Yancey and Doyle, who were officers of Applied Signal, were privy to certain confidential proprietary information concerning Applied Signal and its business, operations, prospects, growth, finances, and financial condition.  Defendants deny the remaining allegations of  Paragraph 13.

14.     Defendants admit that plaintiffs bring this lawsuit as a class action under the Federal Rules of Civil Procedure referenced in Paragraph 14 and on purported behalf of the Class. Defendants deny the remaining allegations of Paragraph 14.

15.     Defendants admit that as of July 29, 2005 (the closet date to the filing of the Complaint for which Applied Signal reported shares outstanding), Applied Signal had over 11

million shares of common stock outstanding. Defendants deny that a Class as described in this paragraph exists. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and on that basis deny them.

16.     Defendants deny that a Class as described in Paragraph 16 exists. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis deny them.

17.     Denied.

18.     Defendants deny that a Class as described in this paragraph exists. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis deny them.

19.     Defendants deny that a Class as described in this paragraph exists. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis deny them.

20.     Defendants lack knowledge or information sufficient to form a belief as to the efficiency of the market for the stock of Applied Signal, and on that basis deny those allegations. Defendants admit that Applied Signal's stock was listed and traded on the NASDAQ. Defendants admit that Applied Signal was a regulated issuer and filed periodic reports with the SEC. Defendants admit that Applied was followed by securities analysts, had market makers, and was eligible to file SEC registration form S-3. Defendants deny the remaining allegations of Paragraph 20.

21.     Denied.

22.     Paragraph 22 contains Plaintiff's representations and allegations regarding the "results" of "interviews" he or his lawyers had with alleged former employees of Applied Signal. Defendants lack knowledge or information sufficient to form a belief as to the truth of such representations and allegations, and on that basis deny them.

23.     Defendants admit that Applied Signal issued a Form 10-K for the fiscal year ending October 31, 2004 dated January 14, 2005, which speaks for itself as to its contents.

24.     Defendants admit that from Applied Signal's founding in 1984 until the filing of

1   the Complaint, the U.S. government has accounted for almost all of Applied Signal's revenues.

2   Defendants admit that in fiscal year 2004, two non-military U.S. intelligence agencies accounted

3   for 80% of the company's revenue, and the U.S. military accounted for the rest. Defendants

4   admit that in fiscal year 2004, one of these two intelligence agencies alone generated over half of

5   the Company's revenues. Defendants admit that Applied Signal reported that its largest single

6   contract accounted for 20 percent of revenues for fiscal year 2004.

7        25.    Defendants admit that in the two fiscal years prior to the filing of the Complaint,

8   just under three quarters of Applied Signal's contracts were "cost-reimbursement" contracts,

9   including contracts for the design, installation, and/or servicing of customized products.

10   Defendants refer to the "Contracts" subsection of the Form 10-K filed January 14, 2005, for a

11   description of the manner in which revenue is recognized on its cost-reimbursement contracts,

12   which is more nuanced and detailed than the description set forth in the second and third

13   sentences of Paragraph 25 of the Complaint. Hence, Defendants admit that the majority of

14   Applied Signal's contracts were accounted for in accordance with the American Institute of

15   Certified Public Accountants Statement of Opinion 81-1, *Accounting for Performance of*

16   *Construction-Type and Production-Type Contracts.* Applied Signal accounted for cost-

17   reimbursement contracts by charging actual labor, materials, and other direct costs, plus estimated

18   indirect costs of operations as incurred (incurred costs). Indirect costs included overhead,

19   research and development, and general and administrative expenses. General and administrative

20   costs were not applied to certain subcontract costs associated with Applied Signal's cost-

21   reimbursement contracts. These subcontracts must be in excess of $250,000 and meet certain

22   other predetermined criteria. Applied Signal recognized contract revenues and profits on cost-

23   reimbursement contracts by applying an estimated fee rate to all incurred costs on an individual

24   contract basis. Fee calculations were based on either negotiated fee amounts or management's

25   assessment of the fee amounts that are likely to be earned. Applied Signal's policy for

26   recognizing interim award fees on its cost-plus-award-fee contracts was based on management's

27   assessment as to the likelihood that the award fee or an incremental portion thereof will be

28   earned, on a contract-by-contract basis. Management's assessments were based on numerous

1  factors including: contract terms, nature of the work to be performed, Applied Signal's

2  relationship and history with the customer, Applied Signal's history with similar types of projects,

3  and Applied Signal's current and anticipated performance on the specific contract.  No award fee

4  was recognized in whole or in part until management determined that it is probable that the award

5  fee or portion thereof will be earned.  Applied Signal's engineering services contracts were

6  typically performed on a level-of-effort basis. Revenue was recognized in accordance with

7  Applied Signal's policy regarding cost-reimbursement contracts.  Defendants deny the remaining

8  allegations of Paragraph 25.

9      26.    Defendants admit that Applied Signal reported in some of its press releases,

10  conference calls, and SEC filings, amounts that it identified as "backlog," which Applied signal

11  defined as future revenues from the uncompleted portions of existing contracts.  Defendants

12  admit that Applied Signal issued a Form 10-K for the fiscal year ending October 31, 2004 dated

13  January 14, 2005, and that the document speaks for itself as to its contents.  Defendants deny the

14  remaining allegations of Paragraph 26.

15      27.    Defendants admit that Applied Signal issued SEC filings and public statements in

16  the form of press releases during January 2004 through January 2005, the contents of which speak

17  for themselves.  The remaining allegations of this paragraph relate to claims and allegations

18  dismissed by the District Court and not pursued by Plaintiffs on appeal, and hence no answer is

19  required.

20      28.    Defendants admit that Applied Signal issued a press release on August 24, 2004,

21  which speaks for itself as to its contents.  Defendants admit that Applied Signal held a conference

22  call on August 24, 2004 concerning, *inter alia,* the company's financial results for the quarter

23  ending July 30, 2004.  Defendants admit that in this conference call, Yancey and Doyle spoke on

24  behalf of Applied Signal.  Defendants admit that in the course of this conference call, Doyle

25  answered a question by stating that the company's backlog was approximately $111 million.

26      29.    Defendants admit that Applied Signal issued a Form 10-Q for the quarter ending

27  July 31, 2004 dated September 9, 2004, which speaks for itself as to its contents.  Defendants

28  deny the remaining allegations of the unlettered portions of  Paragraph 29.

1    a.    Defendants admit that Applied Signal issued a Form 10-Q for the quarter

2    ending July 31, 2004 dated September 9, 2004, which speaks for itself as to its contents.

3    Defendants deny the remaining allegations of sub-paragraph a. of Paragraph 29.

4    b.    Defendants admit that Applied issued a Form 10-K for the fiscal year

5    ending October 31, 2004 dated January 14, 2005, which speaks for itself as to its contents.

6    Defendants deny the remaining allegations of sub-paragraph b to Paragraph 29.

7    c.    Admitted.

8    30.    Denied.

9    a.    Defendants lack knowledge or information sufficient to form a belief as to

10   the truth of the allegations regarding CW-1's identity and what that person said, and on that basis

11   deny these allegations.  Defendants admit that Cowbird was a contract for the U.S. military.

12   Defendants deny the remaining allegations of this sub-paragraph.

13   b.    Defendants lack knowledge or information sufficient to form a belief as to

14   the truth of the allegations regarding CW-2's identity and what that person said, and on that basis

15   deny these allegations.  Defendants admit that Cowbird was a contract for the U.S. military.

16   Defendants admit that as of late May or early June 2004, the Cowbird contract value (which is not

17   the same as the amount remaining on the contract) was approximately $8.6 million.  Defendants

18   deny the remaining allegations of this sub-paragraph.

19   c.    Defendants admit that they signed Exhibits to Applied Signal's Form 10-Q

20   for the third quarter 2004 dated September 9, 2004, that were certifications pursuant to Section

21   906 of the Sarbanes-Oxley Act which stated, *inter alia*, that to each person's knowledge,

22   "information contained in [this] Report fairly presents, in all material respects, the financial

23   condition and result of operations of the Company."  Defendants admit that Doyle signed the

24   Form 10-Q.  Defendants deny the remaining allegations of this sub-paragraph.

25   31.    Defendants admit that Applied Signal filed a Form 10-Q for the third quarter 2004

26   on Thursday, September 9, 2004.  Defendants admit that on Monday, September 13, 2004,

27   analyst Stephen E. Levenson of Advest issued a report, the contents of which speak for

28   themselves.  Defendants admit that Levenson's report stated that Advest had changed its rating of

1  Applied Signal's stock from "buy" to "neutral."  Defendants admit that the reported price per

2  share of Applied Signal's stock on September 13, 2004, was $36.00 when the market opened and

3  $34.31 at the close.  Defendants admit that the reported price per share of Applied Signal stock

4  was $31.78 per share by the close of the market on September 15, 2004.  Defendants deny the

5  remaining allegations of this paragraph.

6          32.     Defendants deny the existence of Stop Work Order No. 2 described in the

7  Complaint, and deny Plaintiff's implicit allegation that there was an impact of Stop Order No. 2

8  on revenues for fiscal year 2004.

9          33.     Defendants admit that Applied Signal issued a press release on December 21,

10  2004, which speaks for itself as to its contents.  Defendants admit that Applied Signal held a

11  conference call on December 21, 2004 concerning, *inter alia*, the company's financial results for

12  the fourth quarter and fiscal year that ended October 31, 2004.  Defendants admit that in this

13  conference call, Yancey and Doyle spoke on behalf of Applied Signal.  Defendants admit that in

14  the press release and the conference call, Applied Signal stated that backlog as of the end of the

15  fourth quarter of fiscal year 2004 was $143 million.  Defendants admit that in the press release

16  and during the conference call, Applied Signal noted that new orders and backlog were expected

17  to be reduced by approximately $11 to $13 million when the company completed negotiations on

18  a stop-work order related to a portion of its largest contract.  Defendants deny the remaining

19  allegations of  Paragraph 33.

20          34.     Defendants admit that they signed Exhibits to Applied Signal's Form 10-K for the

21  fiscal year 2004 filed January 14, 2005, that were certifications pursuant to Section 906 of the

22  Sarbanes-Oxley Act which stated, *inter alia*, that to each person's knowledge, "information

23  contained in [this] Report fairly presents, in all material respects, the financial condition and

24  result of operations of the Company."  Defendants admit that Yancey signed the Form 10-K.

25  Defendants admit that in the Form 10-K, Applied Signal stated that backlog as of the end of the

26  fourth quarter of fiscal year 2004 was $143,369,000.  Defendants admit that Applied Signal noted

27  that new orders and backlog were expected to be reduced by approximately $11 to $13 million

28  when the company completed negotiations on a stop-work order related to a portion of its largest

1    contract.  Defendants deny the remaining allegations of this paragraph.

2         35.    Denied.

3              a.    Defendants deny that there was a Stop Work Order No. 2 as described in

4    the complaint and deny Plaintiff's implicit assumption that there was a "likely impact" to the

5    alleged Stop Work Order No. 2.

6              b.    Defendants lack knowledge or information sufficient to form a belief as to

7    the truth of the allegations regarding CW-3's and CW-4's identities and what those persons

8    "indicated" or "confirmed" to Plaintiff or his attorneys, and on that basis deny these allegations.

9    Defendants admit that the Excelsior contract value (which is not the same as the amount

10   remaining on the contract) was over $20 million, and that a stop work order relative to the

11   Excelsior contract was received in August 2004.  Defendants deny the remaining allegations of

12   sub-paragraph b of Paragraph 35.

13             c.    Defendants lack knowledge or information sufficient to form a belief as to

14   the truth of the allegations regarding CW-3's identity and what that person indicated to Plaintiff

15   or his attorneys, and on that basis deny those allegations.  Defendants deny the remaining

16   allegations of sub-paragraph c of Paragraph 35.

17        36.    Defendants admit that Applied Signal filed a Form 10-K for the fiscal year ending

18   October 31, 2004 dated January 14, 2005, which speaks for itself as to its contents.  Defendants

19   deny the remaining allegations of paragraph 36.

20        37.    The allegations of this paragraph relate to claims and allegations dismissed by the

21   District Court and not pursued by Plaintiffs on appeal, and hence no answer is required.

22        38.    The allegations of this paragraph relate to claims and allegations dismissed by the

23   District Court and not pursued by Plaintiffs on appeal, and hence no answer is required.

24        39.    The allegations of this paragraph relate to claims and allegations dismissed by the

25   District Court and not pursued by Plaintiffs on appeal, and hence no answer is required.

26        40.    The allegations of this paragraph relate to claims and allegations dismissed by the

27   District Court and not pursued by Plaintiffs on appeal, and hence no answer is required.

28        41.    Denied.

ANSWER TO CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
MASTER FILE NO. C 05-1027

42.     Defendants admit that Applied Signal issued a press release on December 21, 2004, which speaks for itself as to its contents.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding consensus estimates of the Thompson (*sic*) Financial survey, and on those basis deny those allegations.  Defendants admit that only once in the six months preceding December 21, 2004, had the reported trading volume of Applied Signal stock exceeded 1 million shares in a day, and that at no other time had the reported trading volume exceeded 600,000 shares in a day.  Defendants deny the remaining allegations of Paragraph 42.

43.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding CW-1's and CW-3's identities and what those persons said to plaintiff or his lawyers, and on that basis deny these allegations.  Defendants deny the remaining allegations of this Paragraph 43.

44.     Defendants admit that Applied Signal issued a press release on February 22, 2005, which speaks for itself as to its contents.  Defendants admit that on February 22, 2005, Applied Signal held a conference call concerning, *inter alia*, the Company's financial results for the first quarter of 2005, which ended on January 31, 2005.  Defendants admit that during the press release and conference call, Yancey attributed Applied Signal's financial results to being a bit behind on execution of contracts, partially due to diverting some labor resources to proposal activity.  Defendants deny the remaining allegations of Paragraph 44.

45.     Defendants admit that the reported trading volume of Applied Signal stock on February 23, 2005 was over 6 million shares.  Defendants admit that the reported closing price of Applied Signal stock on February 22, 2005 was $27.52 per share.  Defendants admit that the reported closing price of Applied Signal stock on February 23, 2005 was $23.24 per share.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 45, and on that basis deny them.

46.     Denied.

47.     Defendants admit that the reported closing price of Applied Signal stock on December 21, 2004 was $37.22 per share.  Defendants admit that the reported closing price of

1   Applied Signal stock on February 23, 2005 was $23.24 per share.  Defendants deny the remaining

2   allegations of  Paragraph 47.

3          48.     Defendant Yancey admits that he sold no stock during the calendar year 2004.

4   Yancey admits that he sold 141,400 shares of Applied Signal common stock from January 3,

5   2005 through January 18, 2005, which represented over 43 percent of his total stock holdings in

6   Applied Signal exclusive of options, and at prices ranging from $31.40 to $34 per share.  Yancey

7   admits that the gross proceeds of these stock sales was approximately $4.6 million.  Yancey

8   denies the remaining allegations of this paragraph.  Defendants Applied Signal and  James Doyle

9   lack information sufficient to form a belief as to the truth of the allegations of Paragraph 48  and

10  on that basis deny the allegations of Paragraph 48.

11         49.     Yancey admits that his stock sales on January 3, 2005 through January 18, 2005

12  preceded the close of Applied Signal's first quarter (January 31, 2005).  Yancey denies the

13  remaining allegations of this paragraph.  Defendants Applied Signal and  James Doyle lack

14  information sufficient to form a belief as to the truth of the allegations of Paragraph 49  and on

15  that basis deny the allegations of Paragraph 49.

16         50.     Denied.

17         51.     Defendants incorporate by reference their responses to each and every foregoing

18  paragraph.

19         52.     Defendants repeat their responses to each and every allegation contained above as

20  if fully set forth herein.

21         53.     Denied.

22         54.     Denied.

23         55.     Denied.

24         56.     Denied.

25         57.     Denied.

26         58.     Denied.

27         59.     Denied.

28         60.     Defendants lack knowledge or information sufficient to form a belief as to

allegations of this paragraph regarding Plaintiff's hypothetical non-purchases of Applied Signal securities, and on that basis deny them. Defendants deny the remaining allegations of Paragraph 60.

61. Denied.

62. Denied.

63. Denied.

64. Defendants repeat their responses to each and every allegation contained above as if fully set forth herein.

65. Denied.

66. Defendants admit that Yancey and Doyle had direct and supervisory involvement in certain day-to-day operations of Applied Signal. Defendants deny the remaining allegations of this paragraph.

67. Denied.

68. Defendants admit that Plaintiff demands a trial by jury on all issues.

## AFFIRMATIVE DEFENSES

As separate affirmative defenses, Defendants state as follows:

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state facts sufficient to state a claim for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Defendants acted in good faith with respect to all matters alleged in the Complaint, and did not directly or indirectly induce any act or acts constituting a violation of or cause of action based on Section 10(b) of the Exchange Act and the accompanying Rule 10b-5.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff and members of the putative Class are estopped from asserting their claims.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff and members of the putative Class waived their claims.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff and members of the putative Class failed to take reasonable steps to mitigate or minimize their damages.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff and members of the putative Class purchased Applied Signal securities in reliance on factors other than the misrepresentations or omissions alleged in the Complaint, and/or in reliance on factors other than the efficient market.

**SEVENTH AFFIRMATIVE DEFENSE**

Some or all of the alleged misrepresentations and omissions were known to Plaintiff, or some members of the putative Class, and knowledge of the alleged misrepresentations or omissions would not have affected their decisions to purchase Applied Signal's securities.

**EIGHTH  AFFIRMATIVE DEFENSE**

The first prong of the Safe Harbor precludes liability for claims based on forward-looking statements if the requirements of the statute are met.  To the extent a court may conclude that it is a defendant's burden to prove that the requirements have been met, Defendants assert as an affirmative defense that the first prong of the Safe Harbor precludes liability for claims based on the forward-looking statements alleged in the Complaint.

**NINTH AFFIRMATIVE DEFENSE**

Loss causation is an element of plaintiffs' claims.  15 U.S.C. § 78u-4(b)(4); *Dura Pharmaceuticals, Inc. v. Broudo*, 125 U.S. 1627 (2005).  To the extent a court may conclude that it is a defendant's burden to prove that some of plaintiff's economic losses were caused by factors other than the misrepresentations or omissions alleged in the Complaint – a proposition with which Defendants disagree – Defendants assert as an affirmative defense that Plaintiff's economic losses were caused by factors other than the misrepresentations or omissions alleged in the Complaint.

**TENTH AFFIRMATIVE DEFENSE**

Defendants have insufficient knowledge or information upon which to form a belief whether he may have additional affirmative defenses.  Defendants accordingly reserve the right to

assert additional defenses in the event discovery indicates such additional affirmative defenses are appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray for relief and judgment as set forth below.

1. For judgment in their favor;

2. That Plaintiff takes nothing by means of their Complaint;

3. For their costs of this litigation; and

4. For such other and further relief as the Court deems just and proper.

Respectfully submitted,


Dated: July 30, 2008     DLA PIPER US LLP


          By: _____/s/ David Priebe_____
           DAVID PRIEBE
          Attorneys for Defendants
          APPLIED SIGNAL TECHNOLOGY, INC.,
          GARY YANCEY and JAMES DOYLE

## DEMAND FOR JURY TRIAL

Defendants demand a trial by jury.

Respectfully submitted,

Dated: July 30, 2008     DLA PIPER US LLP


          By _____/s/ David Priebe_____
           DAVID PRIEBE
          Attorneys for Defendants
          APPLIED SIGNAL TECHNOLOGY, INC.,
          GARY YANCEY and JAMES DOYLE