1   JEFFREY S. NOBEL (*jnobel@izardnobel.com*)
    MARK P. KINDALL (Bar #138703) (*mkindall@izardnobel.com*)
2   **IZARD NOBEL LLP**
    29 South Main Street, Suite 215
3   West Hartford, CT  06107
    Tel: (860) 493-6292 |  Fax:  (860) 493-6290
4
    ALAN R. PLUTZIK (Bar #077785) (*APlutzik@*
5   *bramsonplutzik.com*)
    **BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP**
6   2125 Oak Grove Road, Suite 120
    Walnut Creek,  CA 94598
7   Tel:  (925) 945-0200

8   Attorneys for Lead Plaintiff

9

10                    UNITED STATES DISTRICT COURT

11          NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

12  | IN RE APPLIED SIGNAL | MASTER FILE NO. C 05-1027 (SBA) |
    | TECHNOLOGY, INC. SECURITIES | |
13  | LITIGATION | CLASS ACTION |

14                                   **MEMORANDUM OF POINTS AND**
                                     **AUTHORITIES IN SUPPORT OF JOINT**
15                                   **MOTION FOR PRELIMINARY**
                                     **APPROVAL OF CLASS ACTION**
16                                   **SETTLEMENT**

17                                   Date:     May 12, 2009
                                     Time:     1:00 p.m.
18                                   Place:    Courtroom 3
                                     Before:  Honorable Saundra Brown Armstrong
19
    THIS DOCUMENT RELATES TO:
20
    ALL ACTIONS
21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

     A.    The Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

     B.    Post-Appeal Litigation and Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

I.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL . . . . . . . . . . . . . . .   3

     A.    The Settlement Is the Result of a Thorough, Rigorous and
           Adversarial Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

     B.    The Proposed Settlement Is "Within the Range of Possible Approval" . . . .   6

     C.    The Proposed Settlement Has "No Obvious Deficiencies" . . . . . . . . . . . . .   11

II.    CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER . . . . . . . . . . . .   13

     A.    The Requirements Of Rule 23(a) Have Been Met . . . . . . . . . . . . . . . . . . .   13

           1.    Rule 23(a)(1) Has Been Satisfied . . . . . . . . . . . . . . . . . . . . . . . . .   13

           2.    Rule 23(a)(2) Has Been Satisfied . . . . . . . . . . . . . . . . . . . . . . . . .   14

           3.    Rule 23(a)(3) Has Been Satisfied . . . . . . . . . . . . . . . . . . . . . . . . .   15

           4.    Rule 23(a)(4) Has Been Satisfied . . . . . . . . . . . . . . . . . . . . . . . . .   16

     B.    The Requirements Of Rule 23(b)(3) Have Been Satisfied . . . . . . . . . . . . .   16

           1.    Common Questions Of Law Or Fact Predominate . . . . . . . . . . . . .   17

           2.    A Class Action Is Superior To Individual Actions . . . . . . . . . . . . .   18

                a.    Rule 23(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

                b.    Rule 23(b)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

                c.    Rule 23(b)(3)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

                d.    Rule 23(b)(3)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

III.   THE COURT SHOULD APPOINT LEAD AND LIAISON COUNSEL AS
      COUNSEL FOR THE CLASS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

IV.   THE PROPOSED SETTLEMENT NOTICE SATISFIES RULES 23(d)
      AND (e) AND DUE PROCESS REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . .   21

IV.   PROPOSED SCHEDULE OF EVENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

1

**TABLE OF AUTHORITIES**

2

3

*Cases*

*In re Adobe Systems, Inc. Sec. Litig.*, 139 F.R.D. 150 (N.D. Cal. 1991) . . . . . . . . . . . . . . . .   14

4

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

5

*In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT,
    2008 WL 3072731 (D. Ariz. Aug. 4, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

6

7

*In re Applied Signal Technology, Inc. Sec. Litig.*, No. C 05-1027 SBA,
    2005 WL 1656886 (N.D. Cal. Apr. 2, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

8

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

9

*Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008) . . . . . . . . . . . . .   2

10

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15, 17

11

*In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio, 2007) . . . . . . . . .   6

12

*Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209 (S.D.N.Y. 1992) . . . . . . . . . .   9

13

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) . . . . . . . . . . .   11

14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . .  3, 11

15

16

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

17

*In re CV Therapeutics, Inc., Sec. Litig.*, No. C 03-3709 SI, 2007 WL 1033478
    (N.D. Cal. April 4, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

18

19

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) . . . . . . . . . . . . . . . .   10

20

*Dura Pharmaceuticals, Inc.  v. Broudo*, 544 U.S. 336 (2005) . . . . . . . . . . . . . . . . . . . . . . .   11

21

*In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . 13, 14, 16

22

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732
    (S.D. Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 21

23

24

*In re Enron Sec. and ERISA Litig.*, No. H-01-3624, 2003 WL 22494413
    (S.D. Tex. July 24, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

25

*Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

26

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) . . .   4

27

28

iii

1    *In re Gulf Oil/Cities Service Tender Offer Litig.,* 142 F.R.D. 588 (S.D.N.Y. 1992) . . . . .    11

2    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . .    14, 15

3    *Hanon* v. *Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . .    15

4    *In re IKON Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166 (E.D. Pa. 2000) . . . . . . . . .    12

5    *In re Indep. Energy Holdings PLC,* 2003 WL 22244676 (S.D.N.Y. 2003) . . . . . . . . . . . .    5

6
7    *Int'l Longshore & Warehouse Union, Local 142, v. C. Brewer and Co., Ltd.,*
         No. CV 06-00260 SOM LEK, 2007 WL 4145228 (D. Hawai'i Nov. 20, 2007) . . .    5

8    *Mendoza v. Tucson Sch. Dist. No. 1,* 623 F.2d 1338 (9th Cir. 1980) . . . . . . . . . . . . . . . .    21

9    *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950) . . . . . . . . . . . . . . . .    21

10   *In re NVIDIA Derivative Corp. Litig.,* No. C-06-06110-SBA (JCS),
11       2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 11, 12

12   *In re OCA, Inc. Sec. and Derivative Litig.,* No. 05-2165, 2008 WL 4681369
13       (E.D. La. Oct. 17, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

     *In re Omnivision Techs., Inc.,* No. C-04-2297 SC, 2007 WL 4293467
14       (N.D. Cal. Dec. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

15   *In re Oracle Sec. Litig.,* No. C-90-0931-VRW, 1994 WL 502054
16       (N.D. Cal. June 16, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

17   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

18   *Robbins v. Koger Properties, Inc.,* 116 F.3d 1441 (11th Cir. 1997) . . . . . . . . . . . . . . . . .    9

19   *Satchell v. Federal Express Corp.,* Nos. C03-2659 SI, C 03-2878 SI,
20       2007 WL 1114010 (N.D. Cal., April 13, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4, 5

21   *In re Silicon Graphics, Inc. Sec. Litig.,* 183 F.3d 970 (9th Cir. 1999) . . . . . . . . . . . . . . .    7

22   *Staton v. Boeing,* 327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

23   *In re THQ Sec. Litig.*, No. CV 00-1783AHM(EX), 2002 WL 1832145
         (C.D. Cal. March 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 17

24   *West v. Circle K Stores, Inc.,* No. CIV. S-04-0438 WBS GGH,
25       2006 WL 1652598 (E.D. Cal. June 13, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3, 4

26

27

28

iv

*In re Williams Sec. Litig.,* No. 02-cv-072-SPF-FHM, 2007 WL 2007987
  (N.D. Okla. July 6, 2007), *aff'd,* __ F.3d __, No. 07-5119,
  2009 WL 388048 (10th Cir. Feb. 18, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 364 F. Supp. 2d 980
  (D. Minn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 13

*Young v. Polo Retail LLC,* No. C-02-4546 (VRW), 2006 WL 3050861
  (N.D. Cal. Oct. 25, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 11

*Zhu v. The Fujitsu Group 401(k) Plan,* No. C-03-1148RMW, 2004 WL 3252573
  (N.D. Cal. Mar. 3, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Zinser v. Accufix Research Institute,* 253 F.3d 1180 (9th Cir.), *amended on other
  grounds,* 273 F.3d 1266 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

**Statutes**

Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b) . . . . . . . . . . . . . . . . . . . . .   2, 15, 20

Securities Exchange Act of 1934, § 20(a), 15 U.S.C. § 78t . . . . . . . . . . . . . . . . . . . . . . .   2, 15, 20

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(4) . . . . . . . . . . .   12

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7) . . . . . . . . . . .   22

**Federal Court Rules**

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13-23

Fed. R. Civ. P. 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Fed. R. Civ. P. 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Fed. R. Civ. P. 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

Fed. R. Civ. P. 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 16

Fed. R. Civ. P. 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

Fed. R. Civ. P. 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Fed. R. Civ. P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16-18

Fed. R. Civ. P. 23(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

Fed. R. Civ. P. 23(b)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18, 19

v

Fed. R. Civ. P. 23(b)(3)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Fed. R. Civ. P. 23(b)(3)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Fed. R. Civ. P. 23(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

Fed. R. Civ. P. 23(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

Fed. R. Civ. P. 23(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

Fed. R. Civ. P. 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

Fed. R. Civ. P. 23(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

Fed. R. Civ. P. 23(g)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

Fed. R. Civ. P. 26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

*Other Authorities*

Elaine Buckberg, *et al., Recent Trends in Shareholder Class Action Litigation:*
    *Bear Market Cases Bring Big Settlements* (NERA, Feb. 2005) . . . . . . . . . . . . . . . .     6

vi

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

The parties have reached an agreement to settle this class action litigation for $2,700,000 (the "Settlement") on the terms set forth in a Stipulation for Settlement dated March 26, 2009 (the "Stipulation"), subject to the Court approval.[1]  In order to begin the settlement approval process and effectuate the Settlement in accordance with Rule 23 of the Federal Rules of Civil Procedure, the parties have filed their Joint Motion for Preliminary Approval of Class Action Settlement, filed contemporaneously herewith (the "Motion").  The Motion respectfully requests that the Court enter the [Proposed] Order Preliminarily Approving Settlement, Directing Notice and Scheduling Hearing Date (the "[Proposed] Order") (1) preliminarily approving the Settlement, (2) scheduling a hearing date (the "Final Hearing Date") to consider whether to grant final approval of the Settlement and the application by Plaintiff's counsel for an award of attorneys' fees, and reimbursement of costs and expenses (the "Fee and Expense Application"), (3) preliminarily certifying a class for settlement purposes (the "Settlement Class"), and (4) directing the dissemination of notice of the Settlement and the Final Hearing Date to the members of the Settlement Class.[2]  For the reasons set forth below, the Joint Motion should be granted.

**FACTUAL BACKGROUND**

**A.  The Litigation**

The Litigation was commenced in March of 2005 as a class action under Rule 23 of the Federal Rules of Civil Procedure in the United States District Court, Northern District of California.  By an Order dated July 13, 2005, the Court appointed Frank Whiting as Lead Plaintiff and approved Lead Plaintiff's selection of Schatz & Nobel, P.C. (now Izard Nobel LLP) as Lead Counsel.  On August 12, 2005, Lead Plaintiff filed a Consolidated Amended Class Action

---

[1]   A copy of the Stipulation is attached as Exhibit A to the Motion.

[2]   The [Proposed] Order was filed with the Motion and this Memorandum.

Complaint (the "Complaint").  The Complaint asserted claims against Defendants for alleged

violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of all

persons who purchased the common stock of Applied Signal Technology, Inc. (hereinafter

"Applied Signal") during the period from August 25, 2004 through February 22, 2005 (the

"Settlement Class Period"), excluding the Company, its officers and directors, employees,

affiliates, legal representatives, heirs, predecessors, successors and assigns, and any entity in

which the Company had a controlling interest or of which the Company was a parent or

subsidiary.  The Complaint alleged that during the Settlement Class Period, Defendants issued

false and misleading statements that artificially inflated the price of Applied Signal's stock.

On February 6, 2006, this Court dismissed the Complaint with prejudice and denied the

pending Motion for Class Certification as moot.  Plaintiff timely appealed, and, on June 5, 2008,

the Ninth Circuit reversed the dismissal of the Complaint.  *Berson v. Applied Signal Technology,*

*Inc.,* 527 F.3d 982 (9th Cir. 2008).

### B.  Post-Appeal Litigation and Mediation

Following the Ninth Circuit's resolution of Plaintiff's appeal, Defendants filed their

Answer to the Complaint, and Plaintiff sent a comprehensive request for production of documents

to Defendants.  The Parties met and conferred, in accordance with Federal Rule 26(f), concerning

the status of the case and the schedule for proceeding with the litigation.  On September 19, 2008,

the parties submitted a detailed Joint Case Management Conference Report which included a

proposed schedule for the litigation.  The Parties then proceeded with the litigation and

commenced discovery.  On September 23, 2008, Plaintiff sent Defendants a detailed

questionnaire concerning the methods and practices used by Applied Signal for storage and

retention of electronic documents.  The Parties exchanged initial disclosures of witnesses in mid-

2

1   October, and Defendants began a rolling production of documents.  The Parties also submitted a

2   joint Motion for Protective Order governing the use of confidential documents obtained during

3   discovery, which was granted by Magistrate Judge James on November 13, 2008.

4          During this time period as well, Defendants broached the subject of whether it would be

5   possible to settle the case.  Counsel for Plaintiff responded that it would be necessary to conduct

6   discovery before settlement discussions could occur.  Accordingly, Defendants agreed to

7   accelerate the production of documents, and the Parties engaged the services of an experienced

8   mediator, former Federal Judge Daniel Weinstein.

9          On January 30, 2009, after submitting detailed memoranda setting forth their respective

10  positions, the Parties participated in a full-day mediation session before Judge Weinstein in New

11  York City.  Counsel for each of the Parties made factual and legal presentations concerning, *inter

12  alia,* the merits of the factual and legal claims asserted in the Litigation and the size of potential

13  damages to the Settlement Class, if any.  Although the Parties were unable to reach agreement

14  during this mediation session, settlement discussions continued through Judge Weinstein, which

15  ultimately resulted in an agreement in principle on February 20, 2009.  Counsel for the Parties

16  subsequently negotiated the terms of the Settlement, and executed the Stipulation on March 26,

17  2009.

## ARGUMENT

## I.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

       Strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle,*

955 F.2d 1268, 1276 (9th Cir. 1992); *In re NVIDIA Derivative Corp. Litig.,* No. C-06-06110-SBA

(JCS), 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008); *West v. Circle K Stores, Inc.,* No.

CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *1 (E.D. Cal. June 13, 2006).  Settlements are

3

1   particularly favored "in class actions and other complex cases where substantial judicial resources

2   can be conserved by avoiding formal litigation."  *NVIDIA,* 2008 WL 5382544, at *2 (quoting *In*

3   *re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir. 1995)).

4           Approval of class action settlements normally proceeds in two stages:  preliminary

5   approval followed by notice to the class, and then final approval.  *See, e.g., Id.; see also West,*

6   2006 WL 1652598, at *2.  This case is now at the first stage of the process.  Standards governing

7   whether preliminary approval should be granted have "both a procedural and a substantive

8   component."  *Young v. Polo Retail LLC,* No. C-02-4546 (VRW), 2006 WL 3050861, at *5 (N.D.

9   Cal., Oct. 25, 2006).  As the *Young* court explained,

10

11              "[i]f the proposed settlement appears to be the product of serious,
                informed, non-collusive negotiations, has no obvious deficiencies,
12              does not improperly grant preferential treatment to class
                representatives or segments of the class, and falls within the range
13              of possible approval, then the court should direct that the notice be
                given to the class members of a formal fairness hearing . . . ."
14              Manual for Complex Litigation, Second § 30.44 (1985).

15

16   *Id.; see also NVIDIA,* 2008 WL 5382544, at *2 (reviewing both the process by which settlement

17   was obtained, and the fairness of the settlement in light of the obstacles to success at trial);

18   *Satchell v. Federal Express Corp.,* Nos. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4

19   (N.D. Cal., April 13, 2007) (granting preliminary approval after finding proposed settlement was

20   non-collusive, had no obvious defects and was within the range of possible settlement approval).

21   Applying the standards set forth above, the Settlement should be preliminarily approved.

22

23        **A.  The Settlement Is the Result of a Thorough, Rigorous and Adversarial Process**

24           This Court is familiar with the procedural history of this case – a history which clearly

25   demonstrates vigorous litigation and a proper adversarial relationship between the parties.  The

26   suit was filed four years ago.  Prior to filing the Complaint, Plaintiff exhaustively reviewed all

27

28                                                   4

publicly-available information about the Company and engaged an investigator to interview numerous former employees, some of whom were listed as confidential witnesses in the Complaint.  The Parties then engaged in a drawn-out battle over whether Plaintiff's Complaint was sufficient to state a cause of action, involving full briefing to this Court, and full briefing and argument before the Court of Appeals.  Plaintiff also briefed and filed a motion for Class Certification, which was denied as moot when this Court dismissed the Complaint.  After obtaining a favorable result from the Court of Appeals, Plaintiff engaged an expert on damages and obtained a preliminary report from him and engaged in significant document discovery before participating in the mediation.

The mediation process also demonstrates that the settlement was not collusive.  The mediation was facilitated by an experienced mediator and former judge who has considerable knowledge and expertise in the field of federal securities law.  As this Court has found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell,* 2007 WL 1114010, at *4; *see also Int'l Longshore & Warehouse Union, Local 142, v. C. Brewer and Co., Ltd.,*  No. CV 06-00260 SOM LEK, 2007 WL 4145228, at *2 (D. Hawai'i Nov. 20, 2007) ("assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.");  *In re Indep. Energy Holdings PLC,* 2003 WL 22244676, at *4 (S.D.N.Y.2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").  This presumption is especially true where, as here, the ultimate settlement amount is based on the mediator's recommendation after consideration of lengthy written submissions and oral presentations of the relevant facts and law.

1

**B.  The Proposed Settlement Is "Within the Range of Possible Approval"**

2

The amount of the proposed $2.7 million Settlement is well-within the range of possible

3

approval, especially given the typical range of settlements in securities-fraud class action

4

litigation, and the substantial factual, legal and evidentiary hurdles that would need to be

5

overcome in order for Plaintiff and the Settlement Class to be successful at trial.

6

Consideration of damages estimates demonstrates the fairness of the proposed Settlement.

7

As courts and commentators have observed, "[t]he typical recovery in most class actions

8

9

generally is three-to-six cents on the dollar."  *In re Enron Corp. Sec., Derivative & ERISA Litig.*,

10

586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) (citing *In re Cardinal Health, Inc. Sec. Litig.,* 528 F.

11

Supp. 2d 752, 764 (S.D. Ohio, 2007) and Elaine Buckberg, *et al., Recent Trends in Shareholder*

12

*Class Action Litigation: Bear Market Cases Bring Big Settlements,* 8 (NERA, Feb. 2005)).  Here,

13

the Settlement provides members of the Settlement Class with a substantial recovery that is well

14

in excess of typical recoveries.  For example, by Defendants' calculations, the Settlement Class

15

16

could recover as little as $143,450 at trial, while Plaintiff's expert calculated maximum

17

Settlement Class Period damages of approximately $24.9 million.  Thus, the proposed Settlement

18

provides a recovery that is approximately 18 times greater than Defendants' damages estimate,

19

and 11 percent of Plaintiff's "best case" damages estimate.

20

The fairness and adequacy of the Settlement is further demonstrated by analysis of the

21

substantial hurdles that the Settlement Class would have to overcome at summary judgment and

22

23

succeed at trial.  While Plaintiff's "best case" damages estimate quantified damages assuming

24

that the Settlement Class prevailed on all claims *and* was awarded the full amount of three stock

25

price drops on September 9, 2004, December 21, 2004, and February 22, 2005, Defendants have

26

27

28

6

vigorously argued that the Settlement Class would not be able to prove scienter, "loss causation" and damages with respect to those claims.

For example, the Settlement Class faced several challenges to establish liability and damages with respect to the Defendants disclosure in September 9, 2004 that the Company had received a "stop-work order" concerning a significant portion of its largest contract. *See* Complaint, ¶29.  This first disclosure occurred after the market closed on Thursday, September 9, 2004, when the Company filed its 10-Q Report with the SEC.  The next day, the price of the stock only declined by $0.07 – less than two tenths of 1 percent -- from $37.64 to $37.57.  While the stock price dropped from $37.57 to $34.31 a few days later on September 13, 2004 (when one of the stock market analysts following Applied Signal issued a report which discussed the "stop work order" and downgraded Applied Signal stock), Defendants could be expected to make strenuous arguments concerning liability and damages for this drop, including:

- *Scienter:*  A federal securities fraud claim requires proof that each defendant had scienter – an "intent to deceive, manipulate or defraud."  *In re Silicon Graphics, Inc. Sec. Litig.,* 183 F.3d 970, 974 (9th Cir. 1999).  While the Ninth Circuit found that Plaintiff had adequately *pled* scienter with respect to Defendants' failure to disclose this "stop-work order" when Defendants reported the Company's "backlog" on August 24, 2004, Plaintiff would have to convince a jury that Defendants acted with scienter by not disclosing the "stop-work order" when they reported backlog.  Defendants would argue that (1) backlog is not a GAAP-defined term, and stop-work orders do not necessarily result in the loss of a contract or a portion of a contract included in the backlog, and thus the statements at issue were not *false,* and it was not *clear* that the

7

statements were misleading; and (2) Defendants had no *motive* to mislead, as they did not sell any stock in the two-week period between their initial backlog disclosure and their subsequent corrective disclosure on September 9, 2004.

- *Materiality:*  Because the stock price did *not* decline significantly the day after Defendants filed their 10-Q containing the corrective disclosure, Defendants would argue that the disclosure was not material to investors.

- *Loss Causation:*   Defendants could be expected to argue that the market's failure to react to the information in the 10-Q Report on September 10, 2004, coupled with the fact that the analyst's September 13 report contained no *new* information, severs the causal link between the alleged wrongdoing and the losses sustained by the class on September 13, based on decisions such as *In re Apollo Group, Inc. Sec. Litig.,* No. CV 04-2147-PHX-JAT, 2008 WL 3072731, at *3 (D. Ariz. Aug. 4, 2008) (analyst's reports did not constitute "corrective disclosures" because "they did not provide any new, fraud-revealing analysis").

Recovering for the stock price drops in December of 2004 and February of 2005 presented additional, serious difficulties.  As alleged, the price of Applied Signal also dropped when the Company reported disappointing financial results on December 21, 2004 and February 22, 2005.  Compl., ¶¶ 42-45.  The Complaint alleges that Defendants received additional "stop-work orders" during the Settlement Class Period, that these "stop-work orders" were never revealed to the public, and that the impact of those stop-work orders caused the disappointing financial results.  *Id.,* ¶¶ 35, 42-45.  However, the documents produced in discovery provided grounds for Defendants to argue that an additional stop-work order received by Applied Signal during this

8

period was not material in scope, and that another – while constituting a directive from the client to stop work until further testing was completed – was not a formal "stop-work order" as set forth in Applied Signal's contracts and the applicable government regulations.  Accordingly, Defendants would argue that their failure to disclose these facts when they reported backlog did not constitute a materially false or misleading statement made with scienter.  Furthermore, establishing the causal connection between the stop work orders, Applied Signal's poor results reported in December of 2004 and February of 2005, and the decline in Applied Signal's stock would have been very difficult.  There were other factors involved in Applied Signal's poor performance, including a labor shortage that impacted the Company's ability to recognize revenue from existing contracts in the first quarter of Fiscal Year 2005 (the results for which were reported on February 22, 2005).  Proving that stop-work orders were a substantial factor in the poor results would have been difficult in light of these other issues.

Assuming that Plaintiff could establish both liability and loss causation, proving the quantum of damages for the December 2004 and February 2005 stock price drops would still have been difficult.  Plaintiff could not establish damages in this case without expert testimony. Inevitably, any such testimony would be disputed by Defendants' experts.  As one court noted:

> Uncertainties also exist with respect to both the fact and quantum of damages. Courts routinely acknowledge the difficulty in proving damages, particularly in the securities context, where reliance on experts is often necessary. *See, e.g., Chatelain v. Prudential-Bache Sec., Inc.,* 805 F. Supp. 209, 214 (S.D.N.Y. 1992) (noting in the class action context, that the "'complexities of calculating damages increase geometrically.'") (citation omitted).  Establishing damages would require extensive, costly and complex expert testimony. *See In re Gulf Oil,* 142 F.R.D. 588, 595 (S.D.N.Y. 1992) ("[i]n the real world, however, the path to a large damage award is strewn with hazards.").

*Cohn v. Nelson,* 375 F. Supp. 2d 844, 848 (E.D. Mo. 2005); *see also Robbins v. Koger Properties, Inc.,* 116 F.3d 1441, 1447 (11th Cir. 1997).  Isolating and removing extraneous causes

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

of the stock drops would be difficult.  Expert damage studies have been found insufficient on just such grounds.  Thus, in *In re Williams Sec. Litig.,* No. 02-cv-072-SPF-FHM, 2007 WL 2007987 (N.D. Okla. July 6, 2007)*,* a court found that plaintiff's expert failed to differentiate between "losses rooted in causes cognizable under loss causation doctrine, on one hand, and, on the other hand, losses attributable to industry-specific stresses, the meltdown in the telecommunications sector, and other negative developments unrelated to the alleged fraud."  2007 WL 2007987, at *62, *aff'd,* __ F.3d __, No. 07-5119, 2009 WL 388048 (10th Cir. Feb. 18, 2009).  In consequence, the *Williams* court found that it would be impossible, based on the expert's testimony, to "ascribe some rough proportion of the whole loss to" defendants' misstatements.  *Id.*  Accordingly, this key evidence did not survive a challenge based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and without the evidence, the plaintiff was unable to survive defendants' summary judgment motion .  *Williams,* 2007 WL 2007987. at *86-87.  Here as well, the parties would inevitably have a "battle of experts" as to whether it was possible to "isolate and remove" from each of the stock price drops the amount of the decline that was caused by other factors, which could lead to an unfavorable result for the Plaintiff.

Trial would almost certainly not end the litigation regardless of the outcome, as one side would certainly appeal, and it is quite possible that both sides would do so in the event that the jury found for the Plaintiff but substantially reduced the damages sought.  Thus, although the parties have already engaged in protracted litigation, continuation of the litigation would be extremely expensive, and in the absence of the Settlement, class members will have to wait substantially longer before they obtain any relief, even assuming they are successful and overcome every obstacle.  As this Court recently stated:

> The outcome of this action was by no means a foregone conclusion. Had Federal
> Plaintiffs continued to litigate, they would have faced a host of potential risks and

10

costs, including . . . high costs associated with lengthy and complex litigation, potential loss on summary judgment, and risks and costs associated with trial, should the case progress that far.  Indeed, even a favorable judgment at trial may face post-trial motions and even if liability was established, the amount of recoverable damages is uncertain. The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation.

*NVIDIA,* 2008 WL 5382544, at *3; s*ee Churchill Village, L.L.C. v. General Electric,* 361 F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further litigation as factors supporting final approval of settlement).  Those risks were equally apparent in the case at bar.

## C.  The Proposed Settlement Has "No Obvious Deficiencies"

The Settlement "has no obvious deficiencies," nor does it "improperly grant preferential treatment to class representatives or segments of the class."  *Young,* 2006 WL 3050861, at *5. Under the Plan of Allocation set forth in the Proposed Notice to the Class, all Settlement Class Members are going to share the Settlement Fund, on a *pro rata* basis, in accordance with the loss causation principles set forth in the Supreme Court's decision in *Dura Pharmaceuticals, Inc.  v. Broudo,* 544 U.S. 336 (2005).[3]  Plaintiff's Counsel have used the stock price drops accompanying the alleged "corrective disclosures" in the Complaint as the basis for calculating the "recognized loss" of each Settlement Class Member.  Under the Plan of Allocation, the recognized loss of each Settlement Class Member is determined on the basis of the number of shares purchased during the Settlement Class Period and held through each stock drop following one of the three corrective disclosures.  For example, a Settlement Class Member who purchased before any

---

[3] "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision Techs., Inc.,* No. C-04-2297 SC, 2007 WL 4293467, at *7 (N.D. Cal. Dec. 6, 2007) (quoting *In re Oracle Sec. Litig.,* No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 16, 1994), and citing *Class Pls. v. Seattle,* 955 F.2d at 1284-85).

11

corrective disclosures and held through the end of the Settlement Class Period would have a recognized loss equal to all three stock price drops, while one who purchased after the first two stock price drops but held through the third would have a recognized loss equal to only the last stock price drop.  In short, while some segments of the Settlement Class will have larger recognized losses than others, the differences are solely due to the application of neutral principles of federal securities law.  "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *In re IKON Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 184 (E.D. Pa. 2000).  Similar Plans of Allocation are routinely approved.  *See, e.g., id* (approving plan where claimants were reimbursed "at various percentages for their defined losses based largely on when they bought and sold stock.").

Moreover, the Lead Plaintiff does not receive "unduly preferential treatment;" he is treated the same as every other Settlement Class Member, and the amount of his recovery will be solely based on the operation of the same Plan of Allocation that applies to every Settlement Class Member.[4]

Finally, Courts also evaluate whether the Settlement provides for excessive compensation to Plaintiff's Counsel.  *See, e.g., NVIDIA,* 2008 WL 5382544, at *3.  In this case, the proposed Settlement provides that Counsel may seek an award of attorneys' fees not to exceed 30 percent of the amount of the Settlement, based on a fee application which will be prepared and filed with the Court prior to the final hearing.  Awards of greater percentages have been made in numerous similar cases. *In re Enron,* 586 F. Supp. 2d at 775-76 (citing studies finding that average

---

[4] In addition, Lead Plaintiff may apply to the Court for compensation for his services on behalf of the Settlement Class.  Such awards are specifically permitted by the PSLRA, 15 U.S.C. § 78u-4(a)(4), and are often granted. *See, e.g., In re CV Therapeutics, Inc., Sec. Litig.,* No. C 03-3709 SI, 2007 WL 1033478, at *2 (N.D. Cal. April 4, 2007); *In re Xcel Energy, Inc., Sec., Derivative &*

12

attorneys fee awards in securities class actions are 32 percent of the settlement).  In addition, the Settlement does not depend upon the fee award; the Court has discretion to approve the Settlement while accepting, rejecting, or modifying Plaintiff's Counsel's fee application.  Thus, the fairness of the Settlement can, and should, be judged independently from the question of fees.

## II.      CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER

Plaintiff further requests that the Court certify a Settlement Class consisting of all persons who purchased Applied Signal common stock during the Settlement Class Period, exclusive of Defendants, members of Defendants' immediate families, any entity in which any Defendant has a controlling interest, and the legal representatives, heirs, successors or assigns of any such excluded person.  Also excluded from the Settlement Class are those Persons who timely and validly make Requests for Exclusion.  Class certification for settlement purposes is appropriate because the four prerequisites of Rule 23(a) and the requirement of one subdivision of Rule 23(b) are satisfied.  Also, Defendants have stipulated to certification for settlement purposes only.[5]

### A.      The Requirements Of Rule 23(a) Have Been Met

#### 1.      Rule 23(a)(1) Has Been Satisfied

Rule 23(a)(1) requires that a class be sufficiently numerous such "that joinder of all members is impractical."  In securities fraud cases involving nationally traded securities, courts draw the "reasonable inference" that joinder of the class is impractical without requiring any additional proof.  *See, e.g., In re THQ Sec. Litig.*, No. CV 00-1783AHM(EX), 2002 WL 1832145, at *3 (C.D. Cal. March 22, 2002); *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 719 (C.D. Cal.

---

*"ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005).  The granting of any such award is at the discretion of the Court.

[5] Prior to this Court's ruling on the Motion to Dismiss, Defendants conceded that Class Certification was appropriate so long as the Complaint survived the Motion to Dismiss.  *See* Docket Entry 51 (Nov. 10, 2005).

13

2002).  Although the exact size of the Settlement Class is not known, the facts alleged in the Complaint easily show that joinder of the claims of all Class Members would be impracticable. The Complaint alleges that there are thousands of members of the Class. Compl., ¶15.  Moreover, Applied Signal's stock traded on the NASDAQ exchange during the Settlement Class Period, and the Company had over 11 million shares of stock outstanding.  *Id.*  These factual allegations amply demonstrate that the size of the Class is sufficiently numerous that it would be impractical to join all of the claims of Settlement Class members in one lawsuit.  *See, e.g., Zhu v. The Fujitsu Group 401(k) Plan,* No. C-03-1148RMW, 2004 WL 3252573, at *5 (N.D. Cal. Mar. 3, 2004) (class of approximately 139 members sufficient to meet numerosity requirement); *In re Emulex,* 210 F.R.D. at 719; *In re Adobe Systems, Inc. Sec. Litig.*, 139 F.R.D. 150, 153 n.4 (N.D. Cal. 1991) (numerosity requirement clearly satisfied by allegation that hundreds if not thousands of class members traded Adobe securities during class period).

### 2.      Rule 23(a)(2) Has Been Satisfied

Rule 23(a)(2) is satisfied if there are questions of law or fact that are common to the class. The "commonality" requirement "has been construed permissively.  All questions of fact and law need not be common to satisfy the rule."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "In fact, several courts have found that a single issue common to the proposed class satisfies Rule 23(a)(2)."  *In re THQ*, 2002 WL 1832145, at *3 (citations omitted).  In securities class actions, "'questions common to all investors will be relatively substantial'" where "'the complaint alleges a common course of conduct over the entire period directed against all investors, generally relied upon, and violating common statutory provisions.'" *Zhu,* 2004 WL 3252573, at *5 (quoting *Blackie v. Barrack,* 524 F.2d 891, 902-03 (9th Cir. 1975)).  The "commonality" requirement has been satisfied in this case, as the Complaint identifies several

14

1

2

3

4

5

6

7

8

questions of law or fact that are common to the Class, including (a) whether the federal securities laws were violated by Defendants' acts alleged in the Complaint, (b) whether Defendants issued false and misleading statements during the Class Period, (c) whether the market price of Applied Signal common stock was artificially inflated because of Defendants' conduct alleged in the Complaint; and (d) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.  Such common questions have been previously found sufficient to establish commonality in this Circuit.  *See Blackie*, 524 F.2d at 902-03.

9

### 3.     Rule 23(a)(3) Has Been Satisfied

10

11

12

13

14

15

16

17

18

Rule 23(a)(3) is satisfied where the plaintiff's claims are "typical of the claims" of the class.  *See Hanon* v. *Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) ("typicality" test is whether members of proposed class "have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct").  The Ninth Circuit has described the standard for satisfying the "typicality" requirement as a "permissive" one, and held that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon,* 150 F.3d at 1020.

19

20

21

22

23

24

25

26

Plaintiff's claims here are typical of the claims of the Class under Rule 23(a)(3) because his claims arise from the same course of conduct that give rise to the claims of the Settlement Class, and Plaintiff's claims are based on the same legal claims as the Settlement Class.  Plaintiff – like all Settlement Class Members – alleged that he purchased Applied Signal common stock at prices that were artificially inflated through related misrepresentations over the course of the Settlement Class Period, claimed that these misrepresentations constituted violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and further claimed that his losses were

27

28

15

caused by these violations of the securities laws.  As Plaintiff and the Settlement Class have the same or similar injuries from Defendants' securities law violations that arise from the same course of conduct, the "typicality" requirement of Rule 23(a)(3) is satisfied.

### 4. Rule 23(a)(4) Has Been Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  In the Ninth Circuit, Rule 23(a)(4) is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action and (ii) the interests of the proposed class representative are not antagonistic to the interests of the Class.  *See, e.g., Staton v. Boeing,* 327 F.3d 938, 957 (9th Cir. 2003).  The requirements of Rule 23(a)(4) are easily satisfied in this case.  First, Plaintiff's Counsel are qualified and experienced in class action litigation, and have done extensive work to date in identifying and investigating potential claims in this action, preparing a detailed class action complaint based, in part, on interviews with several former company employees, filing and briefing a motion for class certification, vigorously opposing Defendants' motion to dismiss, successfully prosecuting an appeal of the dismissal, and engaging in discovery.  *See Emulex,* 210 F.R.D. at 720 (court evaluating adequacy of counsel's representation may examine "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself").  Second, there is no conflict between Plaintiff's interests and the interests of the Settlement Class Members.  As discussed above, Plaintiff and the members of the Settlement Class assert the same legal claims, and their losses arise out of the same course of conduct and securities law violations by Defendants during the Settlement Class Period.

### B. The Requirements Of Rule 23(b)(3) Have Been Satisfied

Plaintiff has also satisfied the requirements of Rule 23(b)(3).  First, common questions of

16

law or fact predominate over any purported individual questions.  Second, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.      Common Questions Of Law Or Fact Predominate

Questions that are common to the class predominate over individual questions where plaintiff alleges a common course of conduct of misrepresentations, omissions, and other wrongdoing that allegedly affect all the class members in the same or similar manner. *Blackie,* 524 F.2d at 905-08.  Courts generally focus on this issue of the defendants' liability in deciding whether the "predominance" standard is met, and if the liability is common to the class, common questions are held to predominate over individual questions.  *Id.* at 902.  In *Blackie*, the Ninth Circuit held that common questions clearly predominated in a securities fraud case, despite the defendants' claims that the amount of damages and degree of reliance were individual issues. *Id.* at 905-06.  As the Supreme Court has observed, the predominance test is "readily met in certain cases alleging consumer or securities fraud."  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997).

Common questions of law or fact predominate over any individual questions within the meaning of Rule 23(b)(3).  There are many common issues of fact or law in this case, including whether the federal securities laws were violated by Defendants' acts alleged in the Complaint, whether Defendants issued false and misleading statements during the Settlement Class Period, whether the market price of Applied Signal common stock was artificially inflated because of Defendants' conduct alleged in the Complaint, whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.  *See THQ,* 2002 WL 1832145, at *8 ("Plaintiffs' claim – which is based on a series of misrepresentations and market manipulations – clearly satisfied the requirement that common questions predominate").  Moreover, the

17

commonality requirement has been met here because the claims of the Class are based upon the "fraud-on-the-market" doctrine, which provides a rebuttable presumption that Class Members relied upon the "integrity of the market price" which reflected the misstatements, thereby obviating the need for Settlement Class Members to prove individualized reliance on the Defendants' misrepresentations.  *See, e.g., Basic, Inc. v. Levinson,* 485 U.S. 224, 241-43, 247 (1988).

### 2.    A Class Action Is Superior To Individual Actions

Rule 23(b)(3) also provides that the Court has to determine whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  As the Ninth Circuit explained in holding that a class action would be superior to other available methods for the fair and efficient adjudication of the controversy, it is "difficult to imagine a case where class certification would be more appropriate.  Without it, thousands of identical complaints by former shareholders would have to be filed – the very result the class action mechanism was designed to avoid."  *Epstein v. MCA, Inc.,* 50 F.3d 644, 668 (9th Cir. 1995). Rule 23(b)(3) provides four nonexclusive factors to guide the Court in determining "superiority." As discussed below, consideration of the factors enumerated in Rule 23(b)(3)(A)-(D) confirm that a class action is the superior method for the fair and efficient adjudication of the claims alleged in the Complaint.

### a.    Rule 23(b)(3)(A)

The first factor (the interest of each class member in controlling the prosecution of separate actions) supports the superiority of a class action here. Rule 23(b)(3)(A).  In a case with thousands of claimants, a class member's interest in having the claims of the class aggregated in a single class action lawsuit substantially outweighs the interest of a class member in individual

18

control of the litigation. *See, e.g., Zinser v. Accufix Research Institute,* 253 F.3d 1180, 1190 (9th Cir.), *amended on other grounds,* 273 F.3d 1266 (9th Cir. 2001).  As the Supreme Court has observed, class actions permit plaintiffs to pool claims which would be uneconomical to litigate individually, and "most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

### b.      Rule 23(b)(3)(B)

The second factor (the extent and nature of any litigation concerning the controversy already commenced by members of the class) also supports the conclusion that a class action is the superior method for the resolution of the claims in the Complaint.  No class member commenced any suit in which the claims at issue in this case were being separately litigated prior to the filing of the cases that were consolidated in this action.  A derivative case on the same subject was filed subsequent to the Ninth Circuit's ruling in this case.

### c.      Rule 23(b)(3)(C)

Consideration of the third factor (the desirability of concentrating the litigation of the claims in the particular forum) further demonstrates that a class action is superior, as Applied Signal has its corporate headquarters in this District, and most of the documentary evidence are located within this District.

### d.      Rule 23(b)(3)(D)

Finally, an analysis of the fourth factor (the difficulties that are likely to be encountered in the management of a class action) need not be considered when deciding whether to certify a settlement class; the Court need not consider "whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620. Even were that *not* the case, this factor would support certification.  All of the claims alleged in

19

the Complaint are governed by a single federal law (Sections 10(b) and 20(a) of the Securities Exchange Act of 1934).  Similarly, as discussed above, as this is a "fraud-on-the-market" case, reliance is presumed, and there will be no need to resolve whether each Settlement Class Member relied on Defendants' alleged misrepresentations. As there is no reason to believe that the prosecution of the claims of Settlement Class Members in a single class action will create *more* management problems than the alternative (*i.e.,* the prosecution of thousands of separate lawsuits by each class member), class adjudication is clearly superior to any other form of adjudication.

Accordingly, Plaintiff requests that the Court preliminarily certify the Settlement Class for settlement purposes only.

## III.   THE COURT SHOULD APPOINT LEAD AND LIAISON COUNSEL AS COUNSEL FOR THE CLASS

A court that certifies a class must also appoint class counsel.  Fed. R. Civ. P. 23(g).  The Rule directs the Court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class

Fed. R. Civ. P. 23(g)(1)(A).  Izard Nobel LLP and Bramson, Plutzik, Mahler & Birkhaeuser, LLP, which were appointed as Lead Counsel and Liaison Counsel pursuant to this Court's July 15, 2005 Order, have done considerable work identifying and investigating potential claims in this matter, as discussed above.  Counsel have devoted substantial time and effort to the prosecution of this litigation, and will continue to do so until it is successfully concluded.  As this Court concluded when it appointed Lead Plaintiff, the two firms have "extensive experience in the area of securities class action litigation."  *In re Applied Signal Technology, Inc. Sec. Litig.,*

20

1    No. C 05-1027 SBA, 2005 WL 1656886, at *4 (N.D. Cal. Apr. 2, 2008).  Accordingly, Plaintiff

2    respectfully requests that the Court appoint these firms to continue representing the Settlement

3    Class.

4    **IV.    THE PROPOSED SETTLEMENT NOTICE SATISFIES RULES 23(d) AND (e)**
5    **        AND DUE PROCESS REQUIREMENTS**

6            Class Counsel proposes that mailed and published notice be given in the form of the

7    Notice and Summary Notice, attached as Exhibits A and B to the proposed Preliminary Approval

8    Order.  Notice to the Class in the form and in the manner set forth in the proposed Preliminary

9    Approval Order will fulfill any requirements of due process that may apply, comply with the

10   Federal Rules of Civil Procedure, and alert and inform Class Members of the Settlement and their

11   opportunity to appear and be heard at the Fairness Hearing.

12

13           Notice must be "reasonably calculated, under all the circumstances, to apprise interested

14   parties of the pendency of the action and afford them an opportunity to present their objections."

15   *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950); *Mendoza v. Tucson*

16   *Sch. Dist. No. 1,* 623 F.2d 1338, 1352 (9th Cir. 1980).  Plaintiff here proposes to give interested

17   parties notice by first-class mail, addressed to all class members who can reasonably be identified

18   and located, and by publication notice in the *Wall Street Journal*.  In addition, Plaintiff proposes

19   to make information concerning the Settlement, including the Notice, the preliminary approval

20   order, and other pertinent documents, available at www.izardnobel.com.  Courts have routinely

21   approved similar notice arrangements.  *See, e.g., In re OCA, Inc. Sec. and Derivative Litig.,* No.

22   05-2165, 2008 WL 4681369, at *16 (E.D. La. Oct. 17, 2008) ("direct mailing of notice, along

23   with publication of Summary Notice in print and on the web, is reasonably calculated to apprise

24   class members of the settlement"); *In re Enron Sec. and ERISA Litig.,* No. H-01-3624, 2003 WL

25

26   22494413, at *3 (S.D. Tex. July 24, 2003).

27

28                                                    21

The content of the notice also meets all of the requirements of both the PSLRA and Federal Rule 23.  Specifically, the Notice "clearly and concisely state[s] in plain, easily understood language," in accordance with Rule 23(c)(2)(B):  the nature of the action (Section 4, ¶1, Exh. A, p. 4); the definition of the class certified (Section 4, ¶2, Exh. A, p. 4); the class claims, issues, or defenses (Section 4, ¶¶4-5, Exh. A, pp. 4-5); that a class member may enter an appearance through an attorney if the member so desires (Section 7, ¶1, Exh. A, p. 6); that the court will exclude from the class any member who requests exclusion (Section 7, ¶7, Exh. A, p. 7); the time and manner for requesting exclusion (Section 7, ¶7, Exh. A, pp. 7-8), and the binding effect of a class judgment on members under Rule 23(c)(3) (Section 8, Exh. A, pp. 9-10). Additionally, in accordance with the PSLRA, 15 U.S.C. § 78u-4(a)(7), the Notice also provides an up-front summary which includes:  a statement identifying the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis (Section 3, ¶ 1, Exh. A. p. 2); a statement of the potential outcome of case, including a summary of the issues on which the parties disagreed, as they did not agree on the average amount of damages per share that would be recoverable if plaintiff prevailed on each claim (Section 3, ¶ 2, Exh. A. pp. 2-3); a statement of attorneys' fees or costs sought, including the amount of such fees and costs determined on an average per share basis and "a brief explanation supporting the fees and costs sought (Section 3, ¶ 3, Exh. A, p. 3); the name, telephone number, and address of counsel for the plaintiff class who will be reasonably available to answer questions from class members (Section 3, ¶ 4, Exh. A., p. 3); and a "brief statement explaining the reasons why the parties are proposing the settlement" (Section 3, ¶¶ 5-6, Exh. A, pp. 3-4).

The Notice clearly describe the terms of the Settlement, the considerations that caused

22

Lead Counsel to conclude that the Settlement is fair and adequate, the maximum counsel fees and expenses that may be sought, the procedure for objecting to the Settlement and the date and place of the Fairness Hearing.  The notices will, when mailed and published as suggested, fairly apprise Class Members of the Settlement and their options with respect thereto.

**IV.     PROPOSED SCHEDULE OF EVENTS**

In connection with preliminary approval of the Settlement, Plaintiff requests that the Court set the date of the final settlement hearing.  Plaintiff anticipates that he will need approximately ten weeks from the date of Preliminary Approval to the date of the final settlement hearing. Accordingly, if the Court grants preliminary approval of the proposed Settlement by April 10, 2009, Plaintiff's counsel respectfully suggests that the Court schedule the Final Hearing Date for the motion calendar on June 23, June 30, or July 7, 2009 (*see* paragraph 17, [Proposed] Order).

**CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the Settlement; (2) direct the dissemination of notice to the members of the Class; and (3) schedule a hearing to consider whether to grant final judicial approval of the Settlement.

23

1   Dated:  April 2, 2009

2                                          ___\s\ Mark P. Kindall_____
                                           Jeffrey S. Nobel
3                                          Mark P. Kindall (Bar # 138703)
                                           **IZARD NOBEL LLP**
4                                          29 South Main Street, Suite 215
                                           West Hartford, Connecticut 06107
5
                                           Alan R. Plutzik (Bar #077785)
6                                          **BRAMSON, PLUTZIK, MAHLER &**
                                           **BIRKHAEUSER, LLP**
7                                          2125 Oak Grove Road, Suite 120
                                           Walnut Creek, CA 94598
8

9                                          *Counsel for Lead Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24